Mr. Price appeals the denial of his petition for rid of habeas corpus as moot on the basis that the parole board says that it is not in the interest of the court to do so, and that the parole board is not in the interest of the court to do so. The parole board's grant of parole to him mooted it out, even though that action was then vacated by the governor. And therefore, mootness misconceives the central complaint of the petition, which is that Mr. Price is being imprisoned wrongfully because the parole authority, whoever that authority may be, has refused to set a parole date for him in accordance with law and has done so in an arbitrary way that violates the United States Constitution. That was his claim in 2002 when he filed his petition concerning the 1999, most recent then, refusal to set the date. That is his complaint as I stand before you at this moment. Well, I guess what you have to convince us is that this is going to be, it's going to repeat, and it will be evaded if we don't hear it, right? No, because it's still there is the point. He is still being imprisoned wrongfully without a parole date. It hasn't gone away. It's still there. He has new things to appeal, right? Parole consideration is a dynamic process. So he has new things to appeal. And I think that's one reason, really, why the Court should find that, I mean, there's a little tension here between speedy relief provided by Federal habeas corpus and what is giving them the first chance to correct. Well, isn't what you want remand and you then want to exhaust what you have, the new things that you have to exhaust and do it all together, right? So that it's all. I would do that if I had to. I think it should be remanded and then it can be explored up to the current moment. His claim that, look, I am being imprisoned wrongfully because the parole authority hasn't given me a parole date. I'm entitled to a parole date. And I think all of the evidence can be brought to bear at that point in time because he has exhausted that central complaint. He did. Well, he hasn't exhausted what happened since, though. What happened since? And I know that you're saying he doesn't need to, that he can do it all together. But if, for example, we feel that he does need to exhaust what has occurred subsequently, then you would have to exhaust that and then do it all together if you. Well, that's kind of our claim for the alternative relief, which is remand it back and stay and obey them, allow him to exhaust the new developments, and then have it all heard together. I don't think that should be required because the Federal court will never catch up to the current situation that way. But Mr. Price did fairly give the State a chance to remedy his complaint by requiring the parole authority to set a parole date for this man. The parole authority, be that the board or the governor, has never given Mr. Price a date that has vested. That's a valuable right, a parole date. You can get conjugal visits with it. You have the prospect of release. You can get your custody minimized. The whole idea of the California law says give an eligible prisoner a parole date when he first comes up for parole unless the parole authority determines that to do so would pose an unreasonable risk, because it's good for a prisoner to have a parole date, a definite time when he knows he's going to be released, instead of this kind of randomness that goes on when you forever and ever deny a parole date and then suddenly. Well, those are all kind of esoteric to me. If I were in prison, it would be good to have a parole date because I would be thinking I would get out. Exactly. That's, you know, I mean, that's kind of the bottom line about what people in prison care about is to run out. That's right. That parole date is valuable. Once you have a parole date, it cannot be taken from you without good cause. It's very important to have that parole date. And that's what he's been unconstitutionally deprived of since at least 1999. That parole date in hand, and of course, we know if that constitutional violation had been remedied at any time, he would have been released in 2001, because that's the parole date that fairly should have been given to him, and that the parole authority refused to vest in him. And again, of course, that's by virtue of the Governor's action. But go back, going back to your original question, Your Honor, of capable of repetition yet evading review, that's what we've had here. We have a record that shows that Mr. Price is now being denied parole by the parole board repeatedly. I mean, I mean, he was denied by the parole board just a few months ago. And it's the same issue. Is this offense so particularly egregious and representative of danger to the public that Mr. Price should not be entitled to a parole date when it's his single act of criminal violence in his entire life, when he has no criminality at all but a driving under the influence offense, when he had no juvenile record, when he was in the service for many years, when he raised a family and was a conforming, contributing member of society, when since that offense he has spent 20 years in prison without a single disciplinary violation, when he's getting reports from the psychiatrists for the last five or ten years and psychiatrists that this man presents absolutely no risk for release, when he's been getting good work reports, when he's addressed the underlying causative factors of that single act of criminal violence in terms of his alcoholism, so that he has done and everyone has agreed that he's done everything he could possibly do in the prison to show that he's suitable for parole. Everything he did before he committed his offense weighs in favor of a finding of suitability for parole. But the parole authority is arbitrarily refusing to set a parole date for him. And he's been suffering from that constitutional violation at least since 1999. And we're in the year 2006 now. And I think it's proper for the federal court, having given the state the chance to weigh in and cure that constitutional violation, to now say we're going to look at this whole situation and provide you whatever relief is appropriate and necessary at this time to cure that violation. Why don't you save the balance of your time? Because I would like to hear what they have to say on the mootness issue, and that will give you more time to respond to that. Because we do know the underlying facts that you're going through at this point. Thank you. Thank you, Your Honor. Good morning, Your Honor. May it please the Court. I'm Deputy Attorney General Pamela B. Hooley. On behalf of the Respondent in this matter. Good morning. The district court's decision in this case should be affirmed because the petition in this case is moot. That petition challenged a 1999 decision by the Board of Prison Terms, now the Board of Parole Hearings, finding Mr. Price unsuitable for parole. Having subsequently obtained a decision by the Board finding him suitable, that decision, the 1999 decision, was superseded. Mr. Price now. Well, it does, though, keep coming up, what he says. I mean, these things do return like a bad penny. I mean, it doesn't, you know, people are going to keep trying to get paroled until they get paroled or, you know, or otherwise. So it does seem to repeat itself. And if let's say that you he then, you know, he has this decision here where he's saying, you know, that obviously, I mean, a lot of people on murders don't get out of parole, on parole, and they're never going to get out of parole. He presents a little bit of a different situation in that he had a fairly law-abiding life. He has a situation, you know, albeit, you know, it's I don't want to minimize to a victim whatever the crime is, but albeit there's a situational, you know, he has a beef with his landlord and all of those things. You know, how is he ever really going to be able to deal with the merits of what happened in the, what is it, the 1999 parole hearing if he has to continue to contest the ones in the future? I mean, he can't ever, he can't get back to this one. Well, Your Honor, we would submit that the 1999 decision, he has gotten the relief that he could have gotten in connection with that case, which would be to offer him a new hearing that comported with due process. So if there had been a violation in 1999 by the board violating his constitutional rights, he would get a new hearing. That's the remedy that's called for under cases such as Hilton. Well, but let's say he, he's not going to be able to go back and reach this 1999 hearing. And let's say that, you know, yeah, he's going to get more parole hearings. But, you know, every day you're in prison is a day that you could get yourself in some more trouble, and he's not going to present the same, he may not present the same at those subsequent parole hearings. So how will, if he was wrongfully denied parole back in 1999, how's he ever going to reach that? Well, having gotten the new parole decision, which found him suitable, he did get the relief he sought. Well, is he out? No, and that's. I mean, isn't that what, you know, isn't that what you're trying, you know, I don't know. To me, if I were sitting in prison, you know, the good news is you get parole. The bad news is you get to stay here. You know, that's, I think that they really want to get out. That's understood, Your Honor. But the process in California allows for the Governor to exercise a separate constitutional and statutory authority. The Board's decision that was challenged has been relieved by the 2003 decision finding him suitable. What Mr. Price needs to do now is challenge the Governor's decision and give the California courts the opportunity to determine whether Governor Schwarzenegger properly found a basis to deny parole. If he's successful in that endeavor, he will get the relief he sought. He will be able to set aside a gubernatorial decision, the decision that's keeping him in custody presently. And that's the distinction. He's gotten the relief. Well, that's kind of a parallel track. In other words, apparently you have to separately challenge what the Governor does as opposed to what the Board does. So he is apparently challenged at least through some elements of California's interminable system what the Governor did, but no final decision yet from the California Supreme Court. But in the meantime, apparently, from the documents we've been asked to take judicial notice of, the Board has acted again to deny him a date. So if the Ott 4 decision mooted the 99 decision, there's a good argument that it did, it seems to me then the Governor unmuted it by scraping it aside and says, hold it, here's what's going to happen. You get no relief. In the meantime, the Board goes back to its schedule and in Ott 5 says no date. So why in there isn't there something for the district court to get hold of, regardless what happens in the California Supreme Court, and run on parallel tracks? Because, Your Honor, it is still the Governor's decision that is keeping him in custody. The Governor has a separate basis for reviewing the record, and as held by the California Supreme Court in Rosencrantz, the Governor can look at the same factors in assessing an individual's suitability for parole. And the Governor has a separate authority to reverse, affirm, or modify that decision. And the Governor's decision was never at issue in this case. The State needs to be given the opportunity to fully adjudicate the Governor's decision. If he's successful, anything that happened after the Governor's decision would be irrelevant. So it's the State's position that the Governor's decision is a separate basis, and to ignore the fact that the Governor's decision is separate would be to ignore California law, which, contrary to Mr. Price's position, sees the Governor and the Board as having separate authority and having separate bases for defending their positions. Moreover, that would also undermine the anti-terrorism and effective death penalties requirement that challenges to custody such as these must be adjudicated fully in the State courts before they come to the Federal courts. What's the status today of his challenge to what the Governor did? It's my understanding, having checked the Supreme Court's site, that his Supreme Court petition is pending. But again, that goes to one of his arguments here. He attempts to conflate the Governor's decision and the Board, describing them entirely as the State, when in fact they aren't, which is why they've sought to challenge the Governor's decision separately. They need to challenge that decision. They can't ask for the district court matter to be stayed and abated to challenge the Governor's decision because claims against the Governor were never contemplated by this petition in 1999. The Board, as comprised in 1999, made a decision finding him unsuitable. If that decision violated his constitutional rights, when the Board subsequently found him suitable, the Board's actions have been corrected. A subsequent decision by the Governor reversing that is a separate injury to Mr. Price, and he needs to follow through and challenge that one fully. So the idea would be to ---- And what's the significance of the Board's subsequent action after the Governor acted? Well, if he's successful challenging the Governor's decision, those decisions would fall away. But presently the reason he is in custody is because of the Governor's decision. Anything subsequent, assuming his challenge is successful, would be a nullity. But if the Board grants him a date, and not five, then he's starting to get the relief he wants. So that one wouldn't be moot, would it? In other words, he can still get relief from the Board, even though the Governor's decision is on a separate track. Can't the Board still grant him a date and go from there? Yes, Your Honor. The Board could grant him a suitability date at a subsequent hearing. The Governor could then review that, and that would be a separate decision that's looking at different factors, because under California law, one of the principal things that is looked at is the timing and the gravity of the offense, and the offense would have been that much further away. At the time of this hearing, I believe this was only the third suitability hearing. So a subsequent Board can find him suitable, and in some circumstances, Petitioners such as Mr. Price have withdrawn their own petitions. If they get ---- But now the Board has denied him parole again, right? To my understanding, that's correct, although that wasn't in the record, I believe, yet. Isn't that one of the documents we've been asked to take judicial notice of, the Board's out-of-five decision? I believe that's correct, Your Honor. I apologize for that error. Yeah. So in other words ---- Would the record on that tell us why? Would the record tell us why the Board has danced back and forth, first saying he's in 99, he's not eligible, then saying he's eligible, which the Governor overrode, and then saying he's not eligible? It may be, Your Honor, that different panels had a different impression of Mr. Price when sitting across from him at the table. It may be that they looked deeper into his record. It may be that ---- It also sort of lends a little credibility to the fact that after, if you know that the Governor's overruled a parole decision, you know, what's the point of giving someone parole? You know, I mean, we're talking about these as two separate tracks, which they are set up as two separate tracks. But, you know, if I were in a panelist position, I would argue that that subsequent hearing was somehow, you know, tainted by the fact that they already knew that the Governor was going to jump over him, so why, you know, why give him a date? Well, board commissioners, as any State officer, have to be assumed to be following their constitutional and statutory duty to comply with the law and give the inmate the individualized consideration to which he's entitled. There would have to be a showing that there was some bias, and there certainly is none in this record. Instead, what we have is a challenge to a 1999 decision, the remedy of which would have been a subsequent board decision. The board found him suitable, and now it's a gubernatorial decision he needs to challenge. All right. Thank you for your argument. Thank you. If I could focus the Court not on a challenge to a specific action of the State parole authority. You know, it's multi-headed. It's the Governor, it's the board. They're acting at different times. But focus on the allegation of illegal restraint. The respondent in this case, the warden, is illegally confining Mr. Price because he's confining him without Mr. Price having a parole date. But as of 1999, that's the case that's before us. As of 1999, as of 2006, that's the case before you. No, no, no. You've got to get into court. And the mootness argument, I think, probably goes away, I'm capable of repetition and evading review. So the fact that he gets a different decision every year doesn't moot an earlier decision. You can still reach the earlier one. But the 99 decision is what's before us. That got really supplanted by the 94 decision or the other decision, which the Governor set aside. So what is really before this Court right now? Let me try it another way, then. I think what's before the Court is the question of whether Mr. Price has been, is being unconstitutionally confined because he's been arbitrarily denied a parole date. With this ---- As of a given time. In other words, you have to look at the facts. And he's got a dynamic situation. And he's been a wonderful guy in prison. He did an ugly thing way back when. And every year he looks a little more shining. But you have to pick a point in time at which you make those decisions. And the parole ---- and the Board did that in 1999. And that's the case we have. Well, would you say the same thing, Your Honor, if he filed the law? Don't get to ask us questions. That's the joy of this job. Then let me make an analogy. What Mr. Price, I think, is in the same position as some prisoner who files a petition for rid of habeas corpus, complaining about unconstitutional confinement, because he's being whipped by a guard who comes into his cell every day at 3 o'clock. And that goes on for a long period of time. The state court lets it happen. It gets into federal court. And either that fellow loses his job or he gets tired of doing it. And he passes it on to his fellow guard. And so now we have a different face that's whipping Mr. Price every day at 3 o'clock. And I cannot believe that the law of habeas corpus is such that it's going to say, well, this whipping that took place by Sergeant Jones is moot now, so we're going to dismiss that case. And if you're complaining about being whipped by Sergeant Smith, you haven't exhausted your state remedies. We have to defer to the state on this and see if the state, because it's a different face behind the constitutional violation, is going to remedy this. And maybe some years later you can come back to court and the federal habeas will provide you speedy and effective relief from your whipping every day. All right. Well, I'm going to ‑‑ you're over your time by two minutes. So I want to thank you as well for your argument. And this matter will stand submitted. Thank you.
judges: T.G. Nelson, Gould, Callahan